INTERSTATE COMMERCE COMMISSION et al. *v.*
HOBOKEN MANUFACTURERS' RAILROAD CO.

No. 43.   Argued November 9, 1943.—Decided December 6, 1943.

*Mr. E. M. Reidy,* with whom *Mr. Daniel W. Knowlton* was on the brief, for the Interstate Commerce Commission; and *Mr. Willis T. Pierson,* with whom *Messrs. Thomas P. Healy, Francis R. Cross, Joseph F. Eshelman,* and *R. Aubrey Bogley* were on the brief, for the Baltimore & Ohio Railroad Co. et al.,—appellants.

*Mr. Parker McCollester,* with whom *Mr. Wilbur LaRoe, Jr.* was on the brief, for appellee.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

This is an appeal under 28 U. S. C. §§ 47a, 345, from a judgment by which the District Court for New Jersey, three judges sitting, set aside an order of the Interstate Commerce Commission, 47 F. Supp. 779.

The question is whether appellee, a terminal switching rail carrier, is entitled to an increase in the divisions which it now receives out of joint class and commodity freight rates maintained by it and numerous trunk line carriers, appellants here, on traffic interchanged by appellee at Hoboken, New Jersey, with Seatrain Lines, Inc., a common carrier by water. The answer depends upon whether the Commission is required to treat as part of appellee's costs of performing its carrier service as prescribed by the joint rates, allowances paid by appellee for services performed by Seatrain in effecting the interchange. The Commission's order dismissed a complaint by which appellee sought to have the Commission prescribe for it increased divisions. 234 I. C. C. 114. The order, reviewable by the District Court, is reviewable by this court on appeal. *Alton R. Co. v. United States,* 287 U. S. 229, 237–40;

*Baltimore & Ohio R. Co.* v. *United States,* 298 U. S. 349, 358; *Rochester Telephone Corp.* v. *United States,* 307 U. S. 125, 142.

Appellee, Hoboken Manufacturers' Railroad Company, operates a terminal switching line extending along the waterfront of Hoboken, New Jersey, for a distance of 1.632 miles. It connects with the Erie Railroad and over it with other trunk lines reaching New York Harbor. Numerous piers on New York Harbor are served by Hoboken, at which the vessels of various steamship lines regularly dock, including those of Seatrain.

Seatrain is a common carrier by water, subject to the Commission's jurisdiction under § 1 (1a) of the Interstate Commerce Act, 49 U. S. C. § 1 (1a), by reason of its control of Hoboken. Investigation of Seatrain Lines, Inc., 195 I. C. C. 215, 206 I. C. C. 328. Since 1932 it has operated vessels in which it transports freight in loaded railroad cars between Hoboken, New Jersey, Havana, Cuba, and Belle Chasse, Louisiana, a point on the Mississippi River near New Orleans. The loaded cars which it transports are placed upon standard gauge railroad tracks located upon four decks of the Seatrain vessels. In loading the vessel, each car is switched onto a track located on a cradle placed alongside the vessel. An overhead crane lifts the cradle containing the car, swings it over the vessel and lowers it through a hatch to the appropriate deck where the car is moved onto one of the railroad tracks on the deck.

In unloading the procedure is reversed. Each car is moved from the deck track onto the cradle. The cradle containing the car is then lifted by the crane and placed on the dock alongside the vessel where the car is switched by Hoboken over its own tracks to a connecting trunk line over which it proceeds to its rail destination. By this operation the expense is avoided of loading and unloading freight into and from the cars at shipside, ordinarily inci-

dent to exchange of traffic between rail and water carriers.

In 1932 Seatrain secured control of Hoboken by the acquisition of all of its shares of capital stock except the qualifying shares of five directors, and the two corporations were brought under the management of common officers. In 1936 Hoboken filed a complaint with the Interstate Commerce Commission under §§ 1 (4) and 15 (6) alleging that the divisions it was receiving out of joint class and commodity rates maintained by it and the trunk lines, appellants here, on carload rail traffic interchanged with Seatrain were too low, and asking an increase. It also sought adjustment of all divisions with respect to such traffic moving under rates prescribed by the Commission subsequent to the date of filing the complaint.

Part of the traffic interchanged with Seatrain moves on so-called lighterage-free rates, and part on non-lighterage-free rates. Under the lighterage-free rates the rail carriers obligate themselves to place freight within reach of ship's tackle, and to receive freight at the foot of ship's tackle—an obligation which normally requires unloading and loading of cars and may also require lighterage and various other services. Hoboken has generally provided for this loading and unloading service by contract with the steamship companies with which it interchanges traffic. The work is done with steamship stevedore labor for which Hoboken has paid the steamship companies at the rate of approximately 75 cents a ton. Under non-lighterage-free rates the shipper performs or provides for necessary loading or unloading of cars, in which case Hoboken has only a switching service to perform.

On carload traffic interchanged with water carriers other than Seatrain's and moving on lighterage-free rates, which is loaded or unloaded by Hoboken or at its expense, Hoboken's division of the joint through rate has been $1.35 per ton. On carload traffic moving to and from Hoboken on non-lighterage-free rates, which is loaded or unloaded

by the shipper or consignee or at his expense, Hoboken's division has been 60 cents per ton.[1]

Since November, 1932, which was shortly after Seatrain acquired stock ownership control of Hoboken, it has paid to Seatrain a tonnage allowance on interchanged freight other than coal. At first 40 cents a ton, the allowance on lighterage-free freight was, in 1937, increased to 73 cents a ton, which is the approximate cost of loading or unloading carload freight. At the same time the 40 cents allowance on non-lighterage-free freight was abolished. Upon Seatrain freight moving on lighterage-free rates, the trunk lines accord to Hoboken a 60 cents per ton switching division, the same as for freight moving on non-lighterage-free rates, since with the one as with the other there is no necessity for the car loading service.

In the proceedings before the Commission Hoboken asked for the existing division of 60 cents per ton out of non-lighterage-free rates and for an increase to $1.35 per ton in its division out of lighterage-free rates on traffic interchanged with Seatrain, on the ground that its tonnage allowances to Seatrain are a part of its costs of performing its rail transportation service with respect to the Seatrain traffic, and that in any case the trunk lines, parties to the joint rates, are benefited by Seatrain's shiploading devices to the extent that the rail carriers are relieved of the 75 cents per ton loading and unloading charge which they would otherwise incur.

The Commission rendered its report after a full hearing at which evidence was taken.[2] It found from the evidence

[1] These divisions have been increased by 5 or 10%, depending on the commodity shipped, as a result of a general rate increase authorized in Fifteen Percent Case, 1937–1938, 226 I. C. C. 41.

[2] For prior reports of the Commission dealing with various aspects of Seatrain's method of operation see Investigation of Seatrain Lines, Inc., 195 I. C. C. 215, 206 I. C. C. 328; Seatrain Lines v. Akron, C. & Y. Ry. Co., 226 I. C. C. 7, 243 I. C. C. 199; Hoboken Mfrs. R. Co. v. Abilene & Southern Ry. Co., 237 I. C. C. 97, 248 I. C. C. 109.

that Seatrain had established its shiploading devices at large expense and had by their adoption made unnecessary, in the interchange of traffic with Seatrain, the loading and unloading of the cars at shipside, which would otherwise be required by the lighterage-free tariffs; that in effecting the interchange "the rail lines do all that is required when they place the cars in or take them from the Seatrain cradle"; and that "the payments which complainant makes to Seatrain cover no part of its transportation service under the lighterage-free rates and are in addition to the full costs of that service."

The Commission recognized that if the payments by Hoboken to Seatrain are not borne in part by the rail lines through a decrease in their divisions and a corresponding increase in Hoboken's divisions "they will receive an unearned benefit" since, by reason of Seatrain's shiploading method, they are relieved of the necessity of compensating Hoboken for performance of the loading and unloading service ordinarily called for by their lighterage-free tariffs. It pointed out, however, that lighterage-free rates "are based on average conditions," and said that if a steamship line now docking on the New York waterfront and served by lighter at the New Jersey rail carriers' expense should shift to a dock with direct rail connections on the New Jersey shore a similar unearned benefit would result; yet "it would hardly be suggested" that the rail carriers should compensate the steamship company for the shift. Moreover it found no evidence that the payments were necessary to induce Seatrain to furnish its shiploading service. It stated that Hoboken's contract with Seatrain was not such evidence in view of Seatrain's control of Hoboken; that it did not appear that Seatrain received such payments from any independent rail connection; and that Seatrain's method of transfer by which it receives and delivers loaded cars has sufficient advantages to impel its use

by Seatrain regardless of contributing payments by its rail connections.

It concluded that Seatrain's improved method of transfer is only an incident to its plan of transportation, that the transfer is consequently not a necessary part of the rail transportation service and that Hoboken is adequately compensated for its part in that service without including the payments to Seatrain in its divisions. The Commission accordingly found that Hoboken's divisions with the payments to Seatrain excluded "are not unjust, unreasonably low, inequitable, or unduly prejudicial" and that the corresponding divisions received by the trunk lines "are not unjust, unreasonably high, inequitable, or unduly preferential of them," and ordered Hoboken's complaint dismissed.

The District Court sustained the Commission's findings that Hoboken's rail transportation service begins and ends at Seatrain's cradle, and that the payments by Hoboken to Seatrain "do not constitute a legitimate transportation cost," and held that upon these findings "supported by evidence" the Commission's "judgment is final." But it thought that even though the contract payments should be disregarded Hoboken might be obligated to pay to Seatrain the reasonable value to it of the use of the Seatrain method of interchange, and that if that use were found to have no value, at least any "windfall" resulting to the rail carriers as a whole should be divided equitably among them.

The District Court accordingly set the Commission's order aside and remanded the cause to the Commission, directing it to consider whether the Seatrain devices "are an efficient aid to railroad transportation"; if it found that they were, to evaluate their worth to Hoboken and to include in Hoboken's costs the amount of a legitimate payment for their use; and if it found that they were not,

to determine whether any windfall to the rail carriers resulted from their use and to establish an equitable basis for its division among the rail carriers. The Commission has brought the case here on assignments of error challenging the District Court's determination that compensation for any part of Hoboken's payments to Seatrain should have been included in Hoboken's divisions.

Section 15 (6) of the Interstate Commerce Act directs that whenever the Commission, upon complaint or on its own motion, determines that the divisions of joint rates applicable to the transportation of passengers or property, "are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial" as between carriers parties to such rates, "the Commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers." In cases where the joint rate has been established pursuant to a finding or order of the Commission, it may also determine and order just and reasonable divisions for the period subsequent to the filing of the complaint "and require adjustment to be made" in accordance with its determination.

At the outset it is necessary to consider the suggestion that the case may have become moot by reason of the fact that since February, 1942, Seatrain's vessels have been in Government service and Seatrain's service has been discontinued. We may assume that the resumption of the service is so uncertain as to render it conjectural whether the Commission's present determination will be given any future operation. But that determination under § 15 (6) is decisive of appellee's request for adjustment of the divisions of joint rates prescribed by the Commission which have been collected since the beginning of the present proceeding. *Brimstone Railroad & Canal Co.* v. *United States*, 276 U. S. 104, 121–3. While the present record does not disclose the full extent to which joint rates,

divisions of which are here sought, were prescribed by the Commission, it does appear that the Commission has in prior proceedings prescribed joint rail-water-rail rates between eastern trunk line and New England territories and southwestern territory applicable over Seatrain lines, to which Hoboken, Seatrain, and most if not all of the trunk lines which are appellants here are parties. Seatrain Lines v. Akron, C. & Y. Ry. Co., 226 I. C. C. 7, 243 I. C. C. 199. As to them decision of this case controls the division of rates for the period since appellee's complaint was filed with the Commission. To that extent at least the case is not moot.

Apart from the Commission's exclusion of Hoboken's tonnage allowances to Seatrain, we have no occasion to consider the sufficiency of the present divisions to Hoboken. The Commission found, upon abundant evidence, that they "are sufficient to cover the cost of the service performed by complainant and also a reasonable return on the property owned or used by it in performing such service." And appellee conceded before the Commission that if the payments to Seatrain are not to be considered a part of appellee's costs the divisions are adequate and "we are not entitled to anything more."

As essential steps in determining whether Hoboken's payments to Seatrain are a part of the rail transportation costs, we think the court below correctly sustained the Commission's findings that Hoboken's transportation service with respect to carload freight interchanged with Seatrain begins and ends at Seatrain's cradles; that the rail lines perform the interchange transportation service covered by their tariffs "when they place the cars in or take them from the Seatrain cradle"; and that consequently the allowances paid by Hoboken "cover no part of its transportation service under the lighterage-free rates and are in addition to the full costs of that service." These findings were based upon an extensive examination

of the method of interchange of freight between rail and water carriers generally and between Hoboken and Seatrain. It is not and could not be seriously contended that they are unsupported by evidence.

We are of opinion that these findings are decisive of this appeal. The Commission's determination of the point in time and space at which a carrier's transportation service begins or ends is an administrative finding which, if supported by evidence, is conclusive on the courts. *Los Angeles Switching Case,* 234 U. S. 294, 311–14; *United States* v. *American Sheet & Tin Plate Co.,* 301 U. S. 402, 408; *United States* v. *Pan American Petroleum Corp.,* 304 U. S. 156, 158; *Baltimore & Ohio R. Co.* v. *United States,* 305 U. S. 507, 525–6; *Swift & Co.* v. *United States,* 316 U. S. 216, 222–5 and cases cited. In the *Tin Plate* and *Pan American* cases this Court sustained the Commission's order prohibiting, as in violation of § 6 (7) of the Act, payment of allowances to an industry by rail carriers for spotting cars on its industrial tracks. The Court accepted as controlling the Commission's findings that under prevailing conditions and practice the interchange tracks of the industry were convenient and usual points for the receipt and delivery of the interchanged cars, that the rail line-haul service accordingly ended there and that for that reason the industry performed no service in spotting cars on its own tracks for which the rail carrier was compensated under its line-haul tariffs and for which the industry was entitled to be compensated by allowances out of the line-haul charges.

The same principles apply in prescribing divisions of joint rail carrier charges where, independently of considerations not present here, the measure of the carrier's participation in the joint transportation service is the measure of its divisions of the joint transportation charges, *New England Divisions Case,* 261 U. S. 184, 195; *United States* v. *Abilene & Southern Ry. Co.,* 265 U. S. 274, 284;

*Baltimore & Ohio R. Co.* v. *United States, supra,* 360–62; Sharfman, Interstate Commerce Commission, vol. III–B, pp. 287–8, and the carrier is entitled to "just compensation only for what it actually does," *Tap Line Cases,* 234 U. S. 1, 29; cf. *Louisiana & Pine Bluff Ry. Co.* v. *United States,* 257 U. S. 114, 118.

Here the Commission was concerned with the divisions of joint rail rates which covered the rail carrier service between inland points of rail shipment or destination and the point of interchange at Hoboken. The Commission has found that this point is the Seatrain cradle at shipside, and that the service rendered by Seatrain in loading and unloading the loaded freight cars upon and from its vessels is no part of the rail carrier service with respect to which divisions are here sought. Consequently neither Hoboken nor Seatrain is entitled to compensation out of the joint rail haul charges for the ship loading and unloading service. Since Hoboken is entitled to receive by way of divisions only its just and equitable share of the proceeds of the joint rail transportation service rendered, it cannot claim as a part of its share the costs of a service which is not a part of the rail service called for by the joint rates. Neither the joint rates of the rail carriers nor the rates of Seatrain are here under attack and presumptively they yield adequate but not excessive compensation for the transportation services rendered under them. *Beaumont, S. L. & W. Ry. Co.* v. *United States,* 282 U. S. 74, 90; *Baltimore & Ohio R. Co.* v. *United States, supra,* 356.

From these findings of the Commission, and its further finding that the interchange service rendered by Seatrain is incident to Seatrain's transportation service, it would seem to follow that Seatrain is entitled to compensation for it as such, and presumably is so compensated by its tariffs. If the compensation is inadequate the remedy lies in an increase in Seatrain's rates or in its divisions of joint rail and

water transportation rates—for which it has an application pending before the Commission, Seatrain Lines *v.* Akron, Canton & Youngstown Ry. Co., No. 28668, filed May 22, 1941—rather than in its participation, by way of allowances paid to it by Hoboken, in the proceeds of a joint rail service of which it performs no part.

Hence the District Court's direction to the Commission to determine what part of the value of the interchange service rendered by Seatrain should "be allowed in establishing Hoboken's legitimate costs," as an "aid to railroad transportation," is inconsistent with its conclusion that the Commission correctly found that the payments by Hoboken to Seatrain "do not constitute a legitimate transportation cost," and that Seatrain's interchange service is no part of the rail transportation. If these findings be sustained, as they must, inquiry whether the payments to Seatrain have induced the performance of an interchange service resulting in savings to the rail carriers is irrelevant to a determination of divisions of the joint rates for the rail service of which the ship loading and unloading service performed by Seatrain is not a part. Cf. *Lehigh Valley R. Co.* v. *United States,* 243 U. S. 444, 446–7.

Section 15 (6), which authorizes the division of joint rates applicable to a transportation service, contemplates only the apportionment of the proceeds of that service among the parties to it and not the compensation of others for a service not covered by the joint rates to be divided. Seatrain is not a party to this proceeding and it is not a necessary party to a proceeding to fix divisions of a joint rail rate—or of a portion of a joint rail-water rate—in which it does not participate. *United States* v. *Abilene & Southern Ry. Co., supra,* 283; *Beaumont, S. L. & W. Ry. Co.* v. *United States, supra.* We are accordingly not concerned with the adequacy of Seatrain's tariffs to compensate for its ship loading and unloading service or with the

lawfulness of the payments to it by Hoboken. A determination by the Commission of the extent of the saving to the rail carriers attributable to Hoboken's payments to Seatrain was therefore not prerequisite to its order prescribing divisions. And its order is adequately supported by its findings that the rail transportation service begins and ends with the placing of the cars in Seatrain's cradles, and that the ship loading and unloading service forms no part of the rail transportation.

These findings, as we have seen, are based upon substantial evidence and since they are dispositive of the case we need not examine the evidence further to ascertain whether it supports the Commission's additional finding that payment of the allowances to Seatrain was not necessary to induce Seatrain to perform its ship loading service in a manner which resulted in savings to the rail carriers.

There is an additional reason why the case should not be sent back to the Commission to reconsider its decision that Hoboken should receive no part of whatever windfall may result to the rail carriers from the use of Seatrain's method of loading and unloading. The prescription of divisions where carriers are unable to agree is not a mere partition of property. It is one aspect of the general rate policy which Congress has directed the Commission to establish and administer in the public interest. *New England Divisions Case, supra,* 195; *United States* v. *Abilene & Southern Ry. Co., supra,* 284–5; *Baltimore & Ohio R. Co.* v. *United States, supra,* 358–60. On such an issue, at least where the Commission prescribes for the complaining party a fair return for the transportation service which it renders, the question as to what is a proper division is one for the Commission's discretion, reviewable only for unreasonableness, departure from statutory standards, or lack of evidentiary support. *New England Divisions Case, supra,* 204; *Baltimore & Ohio R. Co., supra,* 359; *Missis-*

*sippi Valley Barge Line Co.* v. *United States,* 292 U. S. 282, 286–7; *Board of Trade* v. *United States,* 314 U. S. 534, 546; *Barringer & Co.* v. *United States,* 319 U. S. 1, 6–7.

The Commission has determined that it is more consistent with the nature of lighterage-free rates, which are "based on average conditions," that the switching carrier receive only fair compensation for the performance of whatever service may be required of it by the tariffs and the method of rail-water interchange, than that it share in any windfall resulting from the use of an economical method of interchange. And it stated in its report that in general the divisions of a short switching line should be determined on the basis of full remuneration for its services, without regard to the level of the joint rates, unless they are as a whole unremunerative.[3] We can hardly say that such determinations of rate policy are arbitrary, or result in such unjust divisions that the court must set them aside. Cf. *O'Keefe* v. *United States,* 240 U. S. 294, 303–4.

We need not consider whether the contention that the Commission's order is confiscatory adds anything to the contention that the divisions which the Commission approved are unjust, unreasonably low, or inequitable. Compare *Baltimore & Ohio R. Co.* v. *United States, supra,* 364–9 with *id.* 383–5. As we have seen, the claim of confiscation is restricted to the Commission's refusal to allow as a part of appellee's divisions the payments made by it to Seatrain. These payments, voluntarily made by appellee, were not exacted by the Commission. The Commission's refusal to include them in divisions of which they were not lawfully a part, not being an infringement of any right of

---

[3] See also Divisions of Joint Rates for Transportation of Stone, 41 I. C. C. 321, 328; Rates of Peoria & Pekin Union Ry. Co., 93 I. C. C. 3, 22; 115 I. C. C. 469, 481–97, 501; Hoboken Mfrs. R. Co. *v.* Atchison, T. & S. F. Ry. Co., 132 I. C. C. 579; Western M. Ry. Co. *v.* Maryland & P. R. Co., 167 I. C. C. 57, 63.

appellee, is obviously not confiscation of its property. Cf. *General American Tank Car Corp.* v. *Terminal Co.,* 308 U. S. 422, 428; *Louisiana & Pine Bluff Ry. Co.* v. *United States, supra.* The Commission's order is sustained and the judgment of the District Court setting it aside is reversed.

*Reversed.*