SEATRAIN LINES, Inc., v.
UNITED STATES.

Civil Action No. 579.

District Court, D. Delaware.

Jan. 30, 1946.

Caleb R. Layton, 3rd (of Hastings, Stockly & Layton), of Wilmington, Del., Wilbur LaRoe, Jr., Frederick E. Brown, and Arthur L. Winn, all of Washington, D. C., and Parker McCollester, of New York City, for petitioner.

John J. Morris, Jr., U. S. Atty., of Wilmington Del., Wendell Berge, Asst. Atty. Gen., and Edward Dumbauld, Sp. Asst. to Atty. Gen., for the United States.

Daniel W. Knowlton, Chief Counsel, Interstate Commerce Commission, and Edward M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, both of Washington, D. C., for the Interstate Commerce Commission.

Before BIGGS and McLAUGHLIN, Circuit Judges, and LEAHY, District Judge.

BIGGS, Circuit Judge.

The suit at bar presents vexatious problems. The plaintiff is Seatrain Lines, Inc. whose operations have been the subject of discussion and decisions by the courts [1] and by the Interstate Commerce Commission [2] on numerous occasions. Reference is made to these decisions for general and particular descriptions of Seatrain's business. Since October 1932 Seatrain has operated as a common carrier in the transportation of property by water. Seatrain ships carry standard gauge railroad tracks and are so designed that loaded freight cars may be lifted to or from the vessels by a cradle device. Commodities may thus be transported in freight cars from shore to ship and from ship to shore without breaking bulk. The cost of loading and unloading freight at the ports is thus reduced substantially. Prior to the war Seatrain took delivery of freight cars from the trunk line railroads at the Port of New York and delivered the cars to trunk line railroads at Belle Chasse, the Port of New Orleans. Seatrain also delivered liquid cargoes in bulk and transported commodities generally. A comparatively small part of the commodities shipped originating at Seatrain's own terminals. Most of the commodities transported were carried in railroad cars put on board the vessels by the peculiar Seatrain devices. [3]

In May 1940, Seatrain inaugurated substantially similar service between the port of New York and Texas City, Texas.

On May 28, 1941 Seatrain filed two applications with the Interstate Commerce

[1] See United States v. Pennsylvania R. Co., 323 U.S. 612, 613, 65 S.Ct. 471, and I. C. C. v. Hoboken Mfrs.' R. Co., 320 U. S. 368, 371, 372, 64 S.Ct. 159, 88 L.Ed. 107; Pennsylvania R. Co. v. United States, D.C., 55 F.Supp. 473, 476, 477, and Hoboken Mfrs.' R. Co. v. United States, D.C., 47 F.Supp. 779, 781.

[2] See Investigation of Seatrain Lines, Inc., 195 I.C.C. 215; Id., 206 I.C.C. 328; Seatrain Lines, Inc., v. Akron, C. & Y. Ry. Co., 226 I.C.C. 7; Id., 243 I.C.C. 199; Hoboken Mfrs.' R. Co. v. Akron, C. & Y. Ry. Co., 234 I.C.C. 114; Hoboken Mfrs.' R. Co. v. Abilene & S. Ry. Co., 237 I.C.C. 97; Id., 248 I.C.C. 109; Application of Missouri Pac. R. Co. and Texas & P. Ry. Co. in Matter of Common Carrier Service by Water, 245 I.C.C. 143.

[3] Seatrain also had accommodations for two passengers on each vessel. We are not presently concerned, however, with this service.

Commission for certificates of convenience and necessity as a common carrier of commodities generally between New York and New Orleans and New York and Texas City, respectively. The "grandfather date" applicable to water carriers is January 1, 1940. See Section 309(a), Part III, Interstate Commerce Act, 49 U.S.C.A. § 909(a). One of Seatrain's two applications to the Commission was for a certificate as a common carrier of commodities generally between New York and New Orleans under the "grandfather" clause. Its second application was for a certificate for its New York and Texas City service as a common carrier of commodities generally, without benefit of the grandfather clause, pursuant to Section 309(a) and (c). Notice of these applications was given by the ICC to certain competing steamship lines, common carriers of commodities generally. On July 2, 1942 the ICC by Division 4 filed a decision[4] granting Seatrain a single certificate as a common carrier by self-propelled vessels of commodities generally between New York and New Orleans and between New York and Texas City. The certificate contained a clause in the usual form stating that the carrier was authorized to perform the service specified subject "* * * to such terms, conditions, and limitations as are now, or may hereafter be, attached to the exercise of such authority by this Commission." The Division laid emphasis in its opinion on the peculiar value of the Seatrain service in that shipments were made in carload lots without breaking bulk and loading and unloading the cars at the ports.

The certificate was ordered to take effect from and after August 10, 1942. Seatrain asserts and has proved, as will hereinafter appear, that acting upon the authority granted by the certificate it has made substantial expenditures and important commitments for the future.[5]

On December 18, 1943, however, Division 4 ordered reconsideration of Seatrain's applications and of the applications for certificates of the Foss Launch & Tug Co. See 260 I.C.C. 103. The division thereafter amended the certificate first issued to the Foss Company on August 26, 1942. The certificate originally issued by the Commission to the Foss Company authorized it to transport commodities generally. The amended certificate issued to the Foss Company eliminated the company's authority to "transport freight cars, loaded or empty, in the performance of a freight-car-ferry service." The course pursued by Division 4, and hence by the Commission, in respect to the Foss company had repercussions on the Seatrain certificate. See also the decision of the Commission in Newtex S. S. Corporation Common Carrier Application, 260 I.C.C. 418. On February 6, 1945, having granted Seatrain an opportunity for the presentation of evidence of which Seatrain did not avail itself and after certain intermediate steps which need not be recited here, the full Commission, one member only being absent, over the protests of Seatrain in respect to the Commission's jurisdiction, ordered Seatrain's original certificate cancelled and a new certificate issued in lieu thereof.

The new certificate limited Seatrain to the service of "a common carrier by self-propelled vessels * * * in the transportation of liquid cargoes in bulk; of empty railroad cars; and of property loaded in freight cars received from and delivered to rail carriers and transported without transfer from railroad cars between the Ports" of New York and New Orleans on the one hand and New York and Texas City on the other.[6] Mr. Brush, the president of Seatrain, testified before this court that the limitations placed upon Seatrain's service by this amendment to its certificate will substantially impair the

---

[4] Not reported for publication.

[5] See the opinion of the Commission in the case at bar, Seatrain Lines Common Carrier Applications, 260 I.C.C. 430. Commissioner Porter stated in this opinion, 260 I.C.C. at page 442 "Applicant asserts that pursuant to, and in reliance upon, the certificate, it made plans to reenter the coastwise trade and has incurred substantial expense and made important commitments for the future.

* * *." See also the testimony of Graham M. Brush, president of Seatrain, at the hearing before this court.

Seatrain's services were terminated by the War, its vessels being requisitioned by the United States. It has planned to recreate and extend its services as indicated.

[6] Cf. the decision of the Commission in Newtex S.S. Corporation Common Carrier Application, 260 I.C.C. 418.

159

business of Seatrain, will render useless the expenditures and commitments heretofore made by Seatrain and will result in serious losses to the company.

Seatrain has petitioned this court[7] to set aside the order of the Commission entered February 6, 1945 and the corrected certificate of public convenience and necessity embodied in that order.

The Commission was not unanimous in the views expressed in its opinion of February 6, 1945.[8] One Commissioner concurred in a separate opinion and three Commissioners dissented in separate opinions. The Commissioners who joined in the majority opinion and the concurring Commissioner took the position that in granting the original certificate to Seatrain authorizing it to transport commodities generally the Division had committed an inadvertent error or a mistake which should be corrected by the amended certificate. The dissenting Commissioners took the view that the action of Division 4 in granting the original certificate to Seatrain was not the result of inadvertence or a mistake but represented the studied policy of the Commission until the reopening of, and the issuance of the amended certificate in, the Foss case. One Commissioner was of the opinion that when a certificate of convenience and necessity has been issued to a common carrier by water that certificate is a franchise and may not be revoked.[9]

The principal issue which we must decide is the authority of the Commission to alter drastically its original certificate. The original certificate permitted the petitioner, as we have stated, to engage in the transportation of commodities generally as a common carrier by water. The amended certificate limiting transportation to property loaded in freight cars received from and delivered to rail carriers without transfer, in effect reduces Seatrain to the status of a car-ferry. It may not initiate or terminate traffic; it may not deliver freight to a truck or any receiver other than a railroad. Such a change in status scarcely can be considered to lie within the permissible rights re-

served in the former certificate to change "terms, conditions and limitations * * attached to the exercise" of the authority. This clause is based on the provisions of Section 309(d) of the Act, 49 U.S.C.A. § 909(d), but the "terms, conditions, and limitations" contemplated by Congress were of the kind that were before the Supreme Court in Crescent Express Lines, Inc., v. United States, 320 U.S. 401, 64 S.Ct. 167, 88 L.Ed. 127, and in Noble v. United States, 319 U.S. 88, 63 S.Ct. 950, 87 L.Ed. 1277. The terms or conditions or limitations which may be imposed by the Commission under the authority of the section cited cannot sanction the radical step which the Commission has taken of transmuting a common carrier by water of commodities generally into a car-ferry.

There is no statutory authority for the revocation or alteration of a certificate. The Commission relies on Sections 17(7) and 315(c) of the Act, 49 U.S.C.A. §§ 17(7) and 915(c). The first subsection referred to is from Part I of the Act relating by reference to common carriers by water. That subsection makes determinations by the Commission subject to rehearing and reconsideration and provides that the Commission or a division of the Commission may change or modify any decision, order or requirment made by a division. Subsection (c) of Section 315 provides that "The Commission may suspend, modify, or set aside its orders under this part upon such notice and in such manner as it shall deem proper." The provision last quoted is intended to apply to regulatory orders of the Commission and not to permit the cancellation of orders authorizing the issuance of certificates of public convenience and necessity. It is our opinion that these statutory provisions do not aid the standing of the Commission's order of February 6, 1945.

Section 212(a), Part II of the Act, 49 U.S.C.A. § 312(a), dealing with Motor Carriers, provides a method whereby a certificate issued to a motor carrier may be suspended or terminated by the Commission. We think it must be conceded that insofar as the termination or revoca-

---

[7] Pursuant to the provisions of the Commerce Court Act and the Urgent Deficiencies Act as reenacted. See 28 U.S.C.A. § 41 (28) and §§ 43 to 48, inclusive.

[8] See Seatrain Lines Common Carrier Applications, 260 I.C.C. 430.

[9] No other member of the Commission took this view. All the other members rejected it either expressly or implicitly.

tion of a certificate issued to a motor carrier under Part II of the Act is concerned, the power of the Commission to terminate or revoke is created and defined in Section 212(a); that if the Commission does not act under that section it is without power to terminate or revoke the certificate of a motor carrier. The Commission has so held. Smith Bros., Revocation of Certificate, 33 M.C.C. 465. Part III of the Act contains no similar provision. The Commission itself prior to the enactment of the Transportation Act of 1940, 54 Stat. 898, called this very fact to the attention of Congress. Commissioner Eastman, Chairman of the Commission's Legislative Committee, reporting to the Senate Committee on Interstate and Foreign Commerce and the House Committee on Interstate and Foreign Commerce on S. 2009 on January 29, 1940, stated, "This bill leaves section 212(a) unchanged and has no corresponding provision in the new part III. While there is room for argument we are inclined to believe that provision for the revocation or suspension of water carrier certificates is not essential if adequate penalty provisions are provided for violation of part III. Revocation or suspension, in the case of motor carriers, is believed to be the most effective means of enforcement since there are so many such carriers and the operations of the great majority are so small, that enforcement through penal actions in courts presents many practical difficulties, but this is not true of water carriers." [10]

 Congress did not include in Part III any express power to change, amend or revoke a certificate held by a carrier by water. We agree with Commissioner Lee that the conclusion seems inescapable that Congress did not intend to confer upon the Commission power to revoke a certificate of public convenience and necessity issued to a common carrier by water. Whether the certificate when issued be called a "franchise" or not seems relatively unimportant.[11] Whatever be its proper name, it is a creature of the statute. Under the particular circumstances presented here, once the certificate was given it may not be revoked, cancelled or limited in any substantial fashion. The statute confers no such power on the Commission and, as we have stated, the Commission's powers are purely statutory.[12]

 It is clear that the Commission may not amend the certificate by changing its essential grant as in the case at bar. It is agreed that there was no fraud in the procurement of the certificate.[13] The Commission asserts, however, that the original grant was made through inadvertence and that it has the right to correct such errors. There is no authority for such remedial action. If the Commission may correct inadvertent errors its power to do so must be deemed to lie in the general authority conferred upon any quasi-judicial or administrative body. Assuming an analogy to the remedial powers of courts to be persuasive, after the end of the term at which the judgment was rendered a court could not reopen the record to correct other than clerical errors except by recourse under unusual circumstances to the ancient writ of coram

[10] Letter from the Chairman of the Legislative Committee, Interstate Commerce Commission, transmitting to the Chairman of the Senate Interstate Commerce Committee and the Chairman of the Committee on Interstate and Foreign Commerce of the House of Representatives a report relative to omnibus transportation legislation, S. 2009, as passed by both houses of Congress, dated January 29, 1940; House Committee print, United States Government Printing Office, Washington, 1940.

The same document is cited in note 5 to the decision in Ziffrin, Inc., v. United States, 318 U.S. 73, 77, 63 S.Ct. 465, 87 L.Ed. 621.

[11] If the certificate be deemed a franchise, since it grants rights to engage in business of a public nature, the grant which it contains is protected by the Fifth Amendment to the Constitution. Unless the right be reserved, the grant may not subsequently be impaired. Frost v. Corporation Commission, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; City of Owensboro v. Cumberland Telephone Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389. The inviolability of the certificate is clear whether it be considered a purely statutory creation or to be of the nature of a franchise.

[12] United States v. Pennsylvania R. Co., 242 U.S. 208, 37 S.Ct. 95, 61 L.Ed. 251; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. R. Co., 167 U.S. 479, 17 S.Ct. 896, 42 L.Ed. 243.

[13] Cf. Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250.

nobis.[14] The mistake of the Commission made by its Division 4 was certainly not clerical and the common law writ is not available to the Commission. Even if it were there are no circumstances in the case at bar which would warrant its application by analogy.

Although the Commission terms the issuance of the original certificate as an instance of inadvertent error, it appears to have resulted from the considered judgment of Division 4 and, therefore, of the Commission. While the petitioner's references to the Foss and the Newtex cases are helpful perhaps in forming a basis to conjecture the Commission's trend of policy, it is unnecessary and indeed improper to attempt to ascertain the mental processes of the Commissioners at the time of the issuance of the orginal order and certificate. The Supreme Court in the recent case of International Union of Mine, Mill & Smelter Workers v. Eagle-Picher Mining & Smelting Co., 325 U.S. 335, 65 S.Ct. 1166, addressed itself to the problem of the correction by an administrative body of its own error. In the cited case the National Labor Relations Board had applied to the Circuit Court of Appeals for the Eighth Circuit for the enforcement of a back pay order and had stated incorrectly the method for computation of the back pay, resulting in a drastic curtailment of pay admittedly owed the employees. The Circuit Court had adopted the Board's method of computation and had approved it in its decree. Eagle-Picher Mining & Smelting Co. v. N. L. R. B., 119 F.2d 903. The company was not prejudiced by this order. Nevertheless, the Supreme Court refused to permit the correction of the patent error. In discussing the question of inadvertence Mr. Justice Roberts speaking for the Court cogently declared, Id., 325 U.S. at page 341, 65 S.Ct. at page 1169, "Administrative flexibility and judicial certainty are not contradictory; there must be an end to disputes which arise between administrative bodies and those over whom they have jurisdiction. This does not mean that the Board could not frame an order which by its terms required modification should conditions change. But here the order was definite and complete; * * *. The conditions remained the same; what had changed was the Board's awareness of them." In the case at bar the Commission has not applied to the courts. However, we believe that the reasoning of the Supreme Court is applicable by analogy to final administrative orders including the order of the Commission granting the original certificate.

■ The testimony introduced by the petitioner showing its expenditure of funds and its large commitments in reliance upon the original certificate will not be stricken from the record. The petitioner has alleged that the Commission's order will deprive it " * * * of property and take its property for public use without just compensation and without due process of law in violation of the Fifth Amendment * * *." The evidence referred to is pertinent to the question, one of mixed law and fact, raised by the petitioner. The testimony objected to supports the conclusion that the petitioner will be deprived of property without compensation and without due process of law if the order of the Commission shall become effective. See Baltimore & O. R. Co. v. United States, 298 U.S. 349, 368, 369, 56 S.Ct. 797, 80 L.Ed. 1209, and United States v. Idaho, 298 U.S. 105, 108, 109, 56 S.Ct. 690, 80 L.Ed. 1070. See also Commissioner Porter's statement, note 5 supra.

■ The Commission has made the argument that the original certificate was too limited in that it did not give Seatrain the right to transport empty freight cars. Therefore, the second certificate, it reasons, is in reality broader than the first. We reject this contention. If the first certificate does not authorize Seatrain to transport empty freight cars, that question may be tested in some appropriate manner. The phraseology of the certificate cannot serve, of course, to impair Seatrain's rights under the grandfather clause in respect to the New York-Belle Chasse route. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162; Quaker City Bus Co., 38 M.C.C. 603.

The order of the Commission will be set aside.

Findings of fact and conclusions of law are filed with this opinion.

---

[14] Cf. United States v. Steese, 3 Cir., 144 F.2d 439. See Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c permitting corrections of errors due to the litigant's inadvertence.