**NEW YORK, SUSQUEHANNA AND WESTERN RAILROAD COM-PANY, Appellant,**

v.

**READING COMPANY.**

**No. 12811.**

United States Court of Appeals Third Circuit.

Argued April 21, 1959.

Decided June 30, 1959.

dersigned believes, finds and concludes that the discharge violated both Sections 8(a) (3) and 8(a) (1) of the Act."

Leon Leighton, New York City, for appellant.

Alfred W. Hesse, Jr., Philadelphia, Pa. (Morgan, Lewis & Bockius, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

This is an appeal by the plaintiff, New York, Susquehanna and Western Railroad Company, from a judgment entered by the District Court for the Middle District of Pennsylvania in its suit against the defendant, Reading Company, for a declaratory judgment with respect to the rights of the parties in the division of certain interline freight revenues. Jurisdiction is based upon the diversity of citizenship of the parties.

The controversy arises out of a division agreement of December 1, 1944 between Susquehanna and Reading which supplemented a division agreement orig-

inally entered into on July 2, 1943. The earlier division agreement related to traffic to or from a station on the Susquehanna Railroad in the Borough of Edgewater, New Jersey, numbered 2265 and designated "Edgewater, N. J." The supplement of December 1, 1944, added a second station in the Borough of Edgewater, numbered 2266 and designated "Edgewater Docks (New York Harbor Lighterage Points), N. J." and by appropriate references provided that on interline traffic to or from that station Susquehanna should be entitled to deduct an allowance of 4.4¢ per 100 pounds, with a minimum of $8.80 per car, except on grain in bulk for which 3.3¢ per 100 pounds should be deducted, before prorating the receipts from joint through rates. The agreement between Susquehanna and Reading did not authorize the deduction of such an allowance by Susquehanna from the revenue on through traffic to or from "Edgewater, N. J." The controversy between the parties involves the question whether Susquehanna is entitled to this special allowance in the division of revenues received from nonbreak-bulk traffic interchanged by it in the Borough of Edgewater, New Jersey, with Seatrain Lines, Inc., a common carrier by water whose ships carry loaded railroad cars without breaking bulk between the Seatrain pier in Edgewater and points on the South Atlantic and Gulf Coasts and in Cuba. At the time the division agreement in question was made Seatrain was not operating in Edgewater but had its New York Harbor terminal in the City of Hoboken, New Jersey. It transferred its operations from Hoboken to Edgewater on March 12, 1947. The agreement thus was not made with the Seatrain nonbreak-bulk traffic in view.

.It is quite clear, although the agreement itself does not specifically so state, that the special allowance of 4.4¢ per 100 pounds allotted to Susquehanna under the agreement in connection with interline traffic to or from "Edgewater Docks (New York Harbor Lighterage Points)" was a harbor charge intended to compensate Susquehanna for loading and unloading railroad cars at shipside and for lighterage and other service needed to transport freight to and from ships berthed at piers other than those served by Susquehanna, in accordance with the practice in New York Harbor of which the Edgewater waterfront is a part. In the case of traffic interchanged by Susquehanna with Seatrain, however, Susquehanna delivers loaded freight cars to the car cradle on Seatrain's pier in Edgewater where Seatrain takes possession of the loaded cars and they are physically transferred by Seatrain's crane to its vessel and placed upon railroad tracks upon one of the decks of the vessel. The reverse operation takes place in the case of incoming traffic and no loading, unloading or lighterage services are performed by Susquehanna in connection with the Seatrain nonbreak-bulk traffic.

In the present case the district court initially referred the issues in the proceeding to the Interstate Commerce Commission. Upon petition of Susquehanna, however, this court directed the district court to vacate the order of reference and to proceed itself to hear and determine all the issues in the case. New York, Susquehanna & Western R. Co. v. Follmer, 3 Cir., 1958, 254 F.2d 510. The district court did so and entered a judgment declaring that with respect to revenue from interline freight traffic originating or terminating on Reading's railroad and interchanged by Susquehanna with Seatrain Susquehanna has never been entitled and is not now entitled under any of the division agreements which have existed between the two railroads to the allowance of 4.4¢ per 100 pounds before prorating such revenues. 166 F. Supp. 646. From this judgment Susquehanna has taken the appeal now before us.

Susquehanna is under the necessity of showing, in order to succeed in its appeal, that the nonbreak-bulk traffic which it interchanges with Seatrain at Seatrain's pier in the Borough of Edgewater passes through "Edgewater Docks (New York

Harbor Lighterage Points)" station and not through "Edgewater" station, as the district court found. Our examination of the record satisfies us that the district court's finding to the contrary is amply supported. The fact is, as was conceded by Susquehanna at bar, that both stations occupy the same geographical area. The switching limits of "Edgewater" station extend on the east to the pierhead line on the westerly side of the Hudson River and take in all of the piers and docks in the Borough of Edgewater. The clerical work of the two stations is conducted in the same building. It is obvious that the two stations are used not to designate different geographical points, but rather to indicate different types of traffic moving to and from the same geographical area, the Borough of Edgewater. In other words "Edgewater Docks (New York Harbor Lighterage Points)" is the station designation for freight destined to be loaded onto or unloaded from vessels berthed at docks or piers at Edgewater or to be transported by lighter or otherwise to or from vessels berthed at other docks or piers in New York Harbor, while "Edgewater" is the station designation for other freight to or from the Borough of Edgewater which does not require harbor service, including the loaded nonbreak-bulk freight cars which are interchanged with Seatrain.

The district court concluded that the practice of interchanging nonbreak-bulk freight cars between Susquehanna and Seatrain through "Edgewater" station was in accordance with the division agreement between the parties, properly construed, and we are in accord with this conclusion for the reasons well stated by Judge Follmer in the opinion which he filed in the district court. 166 F.Supp. 646, 652–654. We need only point out in this connection that when the division agreement of 1944 was made, both Susquehanna and Reading were familiar with the ruling of the Interstate Commerce Commission in Hoboken Mfrs. R. Co. v. Akron, C. & Y. Ry. Co., 1939, 234 I.C.C. 114, affirmed sub nom. I. C. C. v.

Hoboken R. Co., 1943, 320 U.S. 368, 64 S.Ct. 159, 88 L.Ed. 107, that a carrier interchanging traffic with Seatrain was not entitled to a special deduction before dividing interline revenue with its connecting railroad where the interchanging carrier performed no service to earn such a deduction. Consistently with this view Susquehanna made no claim for the special harbor allowance of 4.4¢ per 100 pounds on nonbreak-bulk traffic interchanged with Seatrain until nearly five years after Seatrain began operations in the Borough of Edgewater and during that period of time Susquehanna proposed and published rates on Seatrain traffic through "Edgewater" station. Indeed, in a list of junction points with connecting roads issued January 31, 1953, Susquehanna showed "Edgewater" as the junction point with the connecting carrier Seatrain.

■ Susquehanna does not seriously contend that substantial evidence is lacking to support the finding of the district court that Susquehanna interchanged nonbreak-bulk traffic with Seatrain at Edgewater station. On the contrary, it places its principal reliance in this regard upon the proposition that the Interstate Commerce Commission in a proceeding initiated by the Borough of Edgewater and the County of Bergen, New Jersey, against Susquehanna, Reading, and 196 other railroads, Borough of Edgewater, N. J. v. Arcade & A. R. Corp., 1949, 273 I.C.C. 710, modified on rehearing, 1951, 280 I.C.C. 121, affirmed sub nom. Baltimore & O. R. Co. v. United States, D.C.N.Y.1951, 100 F. Supp. 1002, found as a fact that the nonbreak-bulk traffic in question was actually interchanged between Susquehanna and Seatrain through the "Edgewater Docks (New York Harbor Lighterage Points)" station and that this fact finding is res judicata in the present proceeding under the doctrine of collateral estoppel.

The district court concluded, and we agree, that no such finding was in fact made by the Commission and that, accordingly, no estoppel arises against

Reading with respect to it. The purpose of the proceeding before the Commission was to require the establishment by the railroads of through routes and joint rates on coastwise, intercoastal, export and import traffic between interior points and Susquehanna's Edgewater Docks station, including the piers served by that station, at rates no higher than those applying on like traffic passing through the piers at Hoboken, New Jersey, served by the Hoboken Manufacturers Railroad Company. The fact which motivated the proceeding was that on such traffic which required loading, unloading or lighterage service the existing rates via the Susquehanna through Edgewater were substantially higher than those via the Hoboken Railroad through Hoboken. It was this discrimination, which was impeding the development of Edgewater as a port, which the Commission in that proceeding ordered to be eliminated.

It appears that the Commission's proceeding and order had nothing to do with the joint rates on nonbreak-bulk traffic then being interchanged between Susquehanna and Seatrain at Seatrain's pier in the Borough of Edgewater. For the Commission stated in its report that those rates were already on a parity with the rates in force at Hoboken and were satisfactory to Seatrain when it transferred its operations from Hoboken to Edgewater. It will be seen that the Commission was not dealing with the question whether Susquehanna was entitled to a special deduction on nonbreak-bulk traffic interchanged with Seatrain at Edgewater or indeed with any question relating to the division of joint rates. It was thus quite unnecessary in that proceeding for the Commission to determine at what station the interchange of nonbreak-bulk traffic between Susquehanna and Seatrain took place. We are satisfied from an examination of the record of the proceeding that the Commission did not do so. In reaching the conclusion that the order of the Interstate Commerce Commission in the Borough of Edgewater case is not res judicata upon this point in this proceeding we are in accord with the decision of the Court of Appeals of New York to the same effect upon precisely the same question in New York, Susquehanna & Western R. Co. v. Central R. Co. of New Jersey, 1958, 5 N.Y.2d 828, 181 N.Y.S.2d 504, 155 N.E. 2d 401.

In view of our conclusion it is unnecessary to consider the question whether Susquehanna would under any circumstances be entitled to the special deduction of 4.4¢ per 100 pounds on nonbreakbulk traffic interchanged with Seatrain in view of the admitted fact that it performs no loading, unloading, lighterage or other harbor services with respect to that traffic.

The judgment of the district court will be affirmed.