## BOWLES v. CUDAHY PACKING CO.
### (two cases).
### Nos. 8882, 8888.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 3, 1945.

Decided March 29, 1946.

Tracy W. Buckingham, of Chicago, Ill. (John C. Banc, Jr., and Reed, Smith, Shaw & McClay, all of Pittsburgh, Pa., on the brief), for appellants.

David London, of Washington, D. C. (George Moncharsh, Deputy Administrator for Enforcement, and Acting Director, Litigation Division, Albert Dreyer, Attorney, Office of Price Administration, both of Washington, D. C., John D. Masterton, Regional Litigation Attorney, of New York

City, and Samuel Chertoff, Enforcement Attorney, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

These cases arise under Section 205(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 925(a). They involve similar facts and were tried together. Their purpose was to restrain appellant from violating Revised Maximum Price Regulation No. 289 (9 F.R. 5140). They resulted in an injunction against the appellant in both cases. The defendant contends that the findings of fact were inadequate; that the Trial Judge issued the injunction as of course and that the issuance of the latter was an abuse of discretion on the part of the Court.

Regulation No. 289 comes under Section 2(a) of the Price Control Act and establishes maximum prices for dairy products. We are concerned with that part of it (Section 1351.1506) providing that the price limitations created by it shall not be evaded "either by direct or indirect methods, in connection with an offer, solicitation, agreement, sale delivery, purchase or receipt of or relating to any of the listed dairy products, alone or in conjunction with any commodity—by tying-agreement or other trade understanding, or otherwise." "Tying-agreement" as interpreted by the Administrator (OPA Service p. 2.812) is: " * * * any arrangement by which the seller conditions the sale of a commodity in any manner upon the purchase by the buyer upon any commodity."

Regarding this section the Court said in United States v. Armour & Co., D.C., 50 F.Supp. 347 at page 349: "In other words, the purchaser, in order to obtain butter, must purchase another commodity whether or not he wants such other commodity, or has any use for it. The other commodity may be useless, and hence worthless to him. Consequently, the amount which he pays for the tied-in commodity would, in effect, be paid in order to obtain the butter. The result is that he is in fact paying a price higher than the established price for the butter. In my opinion, the Administrator intended, by the sections referred to above forbidding evasion, to prevent this type or similar types, of schemes. If the defendants and others are allowed to evade the Act by this type of agreement, the purpose of the Act to stabilize prices and thus

to prevent inflation would be circumvented. If a dealer controlled a scarce commodity, he would be able by means of such a tying agreement to unload a plentiful and unwanted commodity on the market. The result would be a severe blow to the whole structure built up to prevent such practices, and their resultant evils."

As to the construction of his Regulations by the Administrator the Supreme Court said in Bowles v. Seminole Rock Co., 325 U.S. 410 at 414, 65 S.Ct. 1215, 1217: "But the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."

The Administrator's complaints state that the appellant is a Maine corporation licensed to do business in Pennsylvania and registered as a wholesale distributor of food under OPA Ration Order No. 16, Section 5.2. In No. 8882 it is alleged that the defendant from December 30, 1942 to the date of the complaint has been engaged in the business of selling at wholesale, dairy products at Charleroi, Pennsylvania. In No. 8888 there is the same allegation with reference to defendant's place of business at New Castle, Pennsylvania. In No. 8882 it is asserted that on December 30, 1943 and "on numerous days and times thereafter, does now, and unless restrained, will, in the future, sell and deliver dairy products, over and above the maximum prices as established by the aforesaid regulations." The charge is identical in No. 8888 except that the starting date of the asserted violations is November 15, 1943 (amended at the trial to September 16, 1943).

The specific offenses charged are tying-agreements of the sale of butter with eggs. An injunction was prayed for in each suit. The answers admit the jurisdictional paragraphs of the complaints and the business of the defendant. They deny the charges and as affirmative defenses say that the defendant has made earnest and sincere efforts to comply with the Price Control Act and its Regulations and that if there have been any violations they have occurred without the defendant's knowledge and contrary to its instructions.

There was evidence in both cases by customers of the appellant that the latter had sold them butter at the ceiling price but only on condition that they also purchase eggs for which they had no need and in more than one instance were forced to sell at a loss. Several witnesses testified along this general line in No. 8882, but in

No. 8888 there was only one such witness. In No. 8882, Matthew Zaucha, a grocery and meat dealer of Charleroi, who had been trading with the defendant for five years, said that in January 1944 he was told by an identified representative of the defendant "that the customers who buy the eggs will get the butter." John Catrino, another customer of the defendant, said that in connection with purchases by him on December 30, 1943 or January 14, 1944, the defendant's manager at Charleroi told him that in order to get butter he had to buy eggs. Adolph Bergstein's story was to the same effect. He had to sell the eggs received by him at a loss. Sam H. Harris and his father had been dealing with Cudahy for forty years. He told of transactions with the appellant's Charleroi manager in which "in order to get the butter I had to buy eggs." Sometimes he got the eggs without the butter. He "tried to get what we could out of them." (eggs). Mano Lichtenstein, buying from Cudahy for twenty-one years, in dealing with one of the appellant's employees at Charleroi, was told "If I want butter he has lots of eggs and I should buy eggs to get the butter." In No. 8888 Anthony Angelo was the sole customer witness testifying for the plaintiff. He has a grocery and meat market in New Castle. On September 16, 1943 a Cudahy salesman from its New Castle plant insisted that Angelo take eggs with the butter he desired saying, "Well, we have got to sell them, eggs and butter."

The defendant's witnesses denied any such compulsory tying-in of butter with eggs as asserted in the plaintiff's case. There was also evidence of efforts to comply with the regulations. Foran, manager at Charleroi for the defendant during part of the critical period, asked if he knew what a tying-in practice was, said "Not exactly. It has never been explained to me properly" and further, "We have never been informed either by the Cudahy Packing Company or the O.P.A. what a tie-in sale is." This particular kind of testimony was discounted by the Court as technical during the cross examination of Buckingham, another defense witness.

Judge Schoonmaker who sat below, has since died. He made findings of fact and conclusions of law in the two cases and filed opinions in both. The findings of fact showed the jurisdiction of the Court under Section 205(c) of the Emergency Price Control Act of 1942. They showed * * * that the Maximum Price Regulation No. 289 was in effect from December 30, 1942 to May 17, 1944 and thereafter as revised to date; that the defendant is a Maine corporation licensed to do business in Pennsylvania, registered as a wholesale distributor of food under OPA Ration Order No. 16, Section 5.2 and at all times from December 30, 1942 to date engaged in the business of selling at wholesale dairy products at Charleroi and at New Castle. The fourth finding of fact and the Court's conclusion of law which are identical in both matters read:

"4. Defendant has violated the Emergency Price Control Act of 1942, and the Regulations adopted thereunder in the sale of dairy products, in that it has accomplished tying-in the sale of butter with eggs by means of tying-in agreements, and will continue so to do unless restrained by this Court.

"Conclusions of Law.

"I. The plaintiff is entitled to an injunction as prayed for in his complaint."

The appellant attacks the findings of fact as inadequate and not complying with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. It urges that the Court below made no findings of the course of action taken by the defendant in its business with respect to the probability of future violations and that therefore it does not know what the basis was for finding that the defendant "will continue to do so unless restrained by this Court." Appellant concedes that probative facts need not be set forth in the findings and that the findings need only contain ultimate facts but contends that these are not present in the findings or at least that they do not appear properly and specifically.

[1, 2] The issue here was simple, amazingly so for an OPA matter. It was whether the defendant had tied-in its sale of butter with eggs in violation of the Price Control Act and its appropriate regulation. This is sharply outlined by the complaints. The testimony graphically supported the charges. It is true that Angelo was the only plaintiff's witness as to No. 8888 but he definitely revealed that the tactics of the defendant in New Castle were similar to those used by it in Charleroi. Defendant's wholesale centers at New Castle and Charleroi are not separate entities. The most claimed for them is that they are branch houses of the appellant which are located miles apart and with entirely different personnel. They are equally the responsibility of the Cudahy Company and the injunc-

tions were granted on proof of a number of violations by that corporation.[1] The defense was a denial coupled with testimony offered to show knowledge of and compliance with the Act and Regulations by the appellant and its employees. This applied to New Castle as well as Charleroi. The District Judge, seeing and hearing the witnesses, believed the small retailers whose testimony in some instances seemed to have been given not too willingly and which testimony bespoke flagrant breaches by the defendant of the pertinent Regulation. The ultimate facts might well have been covered more fully, but these were not cases where elaborate findings were indicated. There was no such situation as in Bowles v. Russell Packing, 7 Cir., 140 F.2d 354, cited by the appellant. There the Court in holding the findings to be "meager and equivocal" said at page 355: "We are unable to tell from a reading of the court's order which regulation, if any, was violated." Here, finding No. 2 fixes the regulation violated and No. 4 details the offenses. The testimony showed repeated violations which finding No. 4 indicates. Appellant in the face of direct forceful evidence of such offenses by it did not choose to offer any testimony of proposed future corrective changes in its business conduct but said that it had not committed the alleged offenses, that it was familiar with the Act and applicable regulations and was conducting its affairs in accordance therewith. In other words, there was not the slightest suggestion that the type of tie-in practices as found by the Trial Court would not continue.

We think therefore the Court's finding that the appellant would continue with tie-in sales unless restrained was reasonable once he had decided that the offenses had been committed. These were non jury cases and sufficient evidentiary and ultimate facts appear in the findings to apprise both the appellant and this Court of the basis of the judgments below. Those facts are fully sustained by the record. They substantially comply with Rule 52(a), F.R.C.P. In Klimkiewicz v. Westminster, 74 App.D.C. 333, 122 F.2d 957 at 958 the Court said: "Criticism is made of the District Court's findings of fact on the ground that they are mere statements of generalities or conclusions and do not meet the requirements of Rule 52 of the New Federal Rules, 28 U.S.C.A. following section 723c, but we think this criticism is not justifiable. The trial court is not required to make findings on all the facts presented and need only find such ultimate facts as are necessary to reach the decision in the case. * * * The judgment should stand if the opinion below gives the appellate court a clear understanding of the basis of the decision." '

In Petterson Lighterage & Towing Corp. v. New York Central R. Co., 2 Cir., 126 F.2d 992 at 996, Judge Learned Hand said: "Findings should not be discursive; they should not state the evidence or any of the reasoning upon the evidence; they should be categorical and confined to propositions of fact which fit upon the relevant propositions of law."

McGee v. Nee, 8 Cir., 113 F.2d 543 at page 546 states the rule to be: "A trial court, in making findings of fact, is required to find only the ultimate facts. The findings should be 'a clear and concise statement of the ultimate facts, and not a statement, report or recapitulation of evidence from which such facts may be found or inferred.'"

■ With reference to appellant's other points it seems obvious that the District Judge did not issue the injunction as a matter of course and that in its issuance he did not abuse his discretion. Under the circumstances before him he was following the directive of Hecht Co. v. Bowles, 321 U.S. 321 at 329, 64 S.Ct. 587, 592, 88 L.Ed. 754, upon which case he relied and from which he quoted in his opinion. The Supreme Court there said: "The historic injunctive process was designed to deter, not to punish." Having determined that there had been tying-in practices by the appellant and being given no assurance whatsoever that the defendant would alter its business ways in that respect, the Trial Court concluded that the offenses would continue unless stopped by the injunctive process of the Court. His conclusion as to this has ample basis in the evidence and inferences therefrom.

Affirmed.

---

[1] See Speten v. Bowles, 8 Cir., 146 F.2d 602, where a person purchased two used farming machines in one transaction from a dealer and sold them above ceiling prices. The Court held page 605: "The propriety and need for the injunction entered against appellant were primarily matters for the discretion of the trial court, and the record does not warrant us in declaring that there has been an abuse."