**BOULEVARD TRANSIT LINES, Inc., v.
UNITED STATES et al.**

Civil Action No. 10785.

District Court, D. New Jersey.

May 5, 1948.

George I. Marcus, of Hackensack, N. J., and Wilber A. Hill, of Washington, D. C., for plaintiff.

Edgar H. Rossbach, U. S. Atty., by Edward V. Ryan, Asst. U. S. Atty., both of Newark, N. J., and Edward J. Hickey, Jr., Sp. Asst. to Atty. Gen., for the United States.

Edward M. Reidy, of Washington, D. C., for the Asst. Chief Counsel, Interstate Commerce Commission.

Messano & Messano, by Ralph Messano, both of Jersey City, N. J., and Sidney Eisen, of New York City, for Hudson Bus Transp. Co., Inc.

Before McLAUGHLIN, Circuit Judge and FAKE and SMITH, District Judges.

FAKE, District Judge.

We have a very voluminous record before us in this case covering petitions, orders, certificates of public necessity and convenience, and also, correspondence, reports of investigations and decisions of the Interstate Commerce Commission bearing on the issues now raised.

It is urged by the plaintiff that the Commission was without authority to enter a certain order, and a superseding certificate thereunder, dated September 24, 1943, wherein and whereby the defendant, Hudson Bus Transportation Co., became vested with certain prior existing rights so modified and changed as to vest in Hudson Bus Transportation Co. a continuous right to operate bus service between West New York and Keansburg, and between Manhattan, N. Y. and Keansburg without a seasonal limitation. A careful study of the preceding rights, commencing with a grandfather right in 1935, shows that originally only a limited or seasonal right from May 15th to September 15th was involved. However, thereafter on the purchase of the original right and the acquisition of two other rights, Hudson, on the date of the order now complained of, was, by the language of that order, as well as by the language of an earlier order, dated June 11, 1942, vested with an unlimited right to operate the year round. Plaintiff urges that this extended right is in competition with its rights and was permitted by the Commission through "inadvertence." This raises a question of fact. Did the Commission function through inadvertence? The record discloses that it did not. That it at all times functioned with actual knowledge of the original limitation, and that it struck out the seasonal limitation by the order complained of and the compliance order of 1940 on which the certificate of June 11, 1942 was based, in the exercise of its discretionary power and in the interest of public necessity and convenience. There can be no doubt of the Commission's authority to enlarge the scope of Hudson's authority. This right, in the Commission, is emphasized in Chicago, St. Paul, Minneapolis & Omaha Railway Co. v. United States, 322 U. S. 1, 64 S.Ct. 842, 843, 88 L.Ed. 1093, wherein the court held that the Commission "had power to include in the authorization provision for service greater than the carrier had asked." Moreover the best answer to the charge of "inadvertence" is the ruling by the Commission itself on that point, found in its opinion dated December 10, 1945, wherein it is said "The description of operating authority therein duplicates exactly the description contained in the Hudson order of July 20, 1940." We therefore conclude that there was no inadvertence by the Commission on the point raised.

plaintiff further urges that the action of the Commission is invalid because in its order of June 11, 1942 the route is defined as being partially "over city streets." It is argued that this description is bad for uncertainty. Under date of December 10, 1945 the Commission filed an opinion covering the use of the phrase, "over city streets" reciting, among other things, that it had been the practice of the Commission, in issuing certificates to long haul carriers, to designate the highways composing the authorized routes but not to specify the streets that might be used in terminal or intermediate points along the route, citing the Lincoln Tunnel application, 12 M.C.C. 184. The Commission concludes by saying: "At the time the Hudson order was issued, there was no apparent reason why the city streets should be specified therein. The omission from the certificate issued to Hudson, pursuant to that order of the designation of the streets over which it was authorized to operate, does not establish that the certificate was inadvertently issued." We agree.

It is interesting to note that the certificate, under which plaintiff, Boulevard, now operates, is subject to the same criticism it directs toward the defendant Hudson's certificate. Boulevard is authorized to operate partially "over city street" and its certificate contains no specification as to that street.

It appears from the record here that Hudson's right to operate over the year, and without seasonal limitation and "over city streets," ripened in the certificate dated June 11, 1942. This certificate was final and the Commission could not revoke or amend it save under the provisions of 49 U.S.C.A. § 312(a), nor can we make a ruling controlling the Commission on this point. Nothing here indicates the presence of the conditions under which that section may be invoked. See United

States v. Seatrain Lines, Inc., 329 U.S. 424. 67 S.Ct. 435, 91 L.Ed. 396.

### Findings of Fact

The ultimate or relevant facts are found as follows:[1]

1. Louis Binetti, doing business as West New York-Keansburg Bus Line, filed an application for an operating certificate, as a common carrier, by motor vehicle of passengers and their baggage, between West New York and Keansburg, on February 8, 1936.

2. The application of Binetti was filed pursuant to Section 206(a) of the Interstate Commerce Act, 49 U.S.C.A. § 306(a), under the "grandfather" clause.

3. Jersey City-Keansburg Transit Lines, Inc., filed an application for an operating certificate as a common carrier, by motor vehicle of passengers and their baggage, between Jersey City and Keansburg, on January 30, 1936.

4. The application of Jersey City-Keansburg was filed pursuant to Section 206(a) of the Interstate Commerce Act, under the "grandfather" clause.

5. On May 9, 1938, a compliance order was granted to Binetti authorizing him to operate between West New York and Keansburg during the season extending from May 15 to September 15, inclusive. "From West New York over City Streets via Union City, Jersey City and Bayonne, N. J., Staten Island, N. Y., Perth Amboy, South Amboy, Morgan, Lawrence Harbor, Clifford Beach,[2] Keyport and Union Beach, N. J., to Keansburg and return over the same route."

6. On May 17, 1938, a compliance order issued to Jersey City-Keansburg Transit Lines, Inc., authorizing it to operate between Jersey City and Keansburg over a route similar to that of the Binetti route from Jersey City to Keansburg via Bayonne and Staten Island.

7. The compliance order of May 17, 1938 to Jersey City-Keansburg Transit Lines, Inc., contained no seasonal limita-

tion but did specify the city streets over which the route was to be operated.

8. On August 9, 1939, Hudson Bus Transportation Co. was authorized to acquire control of Jersey City-Keansburg line by purchase of its capital stock and to purchase the "grandfather" rights of the Binetti line.

9. On April 15, 1940, the Commission approved the purchase by Hudson of the "grandfather" rights of the Jersey City-Keansburg line and unification of such rights, with those that had previously been acquired from Binetti, with duplications eliminated, was authorized.

10. On July 20, 1940, the Commission issued a compliance order to Hudson. This order vacated the Binetti and Jersey City-Keansburg orders and authorized Hudson, as successor in interest to Jersey City and Binetti, to operate as a common carrier by motor vehicle of passengers and their baggage, between West New York and Keansburg, as follows: "From West New York, over city streets via Union City, Jersey City and Bayonne, N. J., Staten Island, N. Y., Perth Amboy, South Amboy, Morgan, Lawrence Harbor, Cliffwood Beach, Keyport and Union Beach, N. J., to Keansburg and return over the same route."

11. The order of July 20, 1940, did not contain the seasonal restriction that formerly had been imposed on Binetti nor did it contain the specific designation of city streets that had been imposed on the Jersey City-Keansburg line. The order permitted a year round operation, over city streets, between West New York and Keansburg.

12. No protest was filed to any order, by any party, at any time prior to June 11, 1942.

13. On June 11, 1942, the certificate, based on the compliance order of July 20, 1940, was issued to Hudson.

14. On June 3, 1940, independently of the prior proceedings, the Commission issued a certificate of public convenience and necessity to Hudson Bus Transporta-

---

[1] Bowles v. Cudahy Co., 3 Cir., 154 F.2d 891, at page 894.

[2] Correct spelling is Cliffwood Beach and was so shown in subsequent orders of the Commission.

tion Co., authorizing it to operate as a common carrier by motor vehicle in a short haul mass transportation of passengers and their baggage between Jersey City and Mid-town Manhattan, N. Y. This certificate was later modified by the Commission in a certificate dated March 16, 1942.

15. On September 24, 1943, the Commission issued to Hudson a certificate which superseded and combined all the operating rights possessed by it under the certificates dated June 11, 1942 and March 16, 1942, as amended.

16. Operation of service between West New York and Keansburg had been suspended during the war by the Commission under date of December 22, 1944.

17. By order of February 9, 1945, the Commission permitted a partial resumption of the suspended service between West New York and Staten Island.

18. The Commission, by virtue of the rights contained in Hudson's certificate of September 24, 1943, stated, by letter dated January 26, 1945, that Hudson could combine its authorized routes so as to permit a through, connecting service between Staten Island, N. Y., and Mid-town Manhattan, N. Y., via Bayonne and Jersey City, N. J.

19. The through service between New York and Staten Island was accomplished by a combination of the West New York-Keansburg and the Jersey City-Manhattan route, using Jersey City as the connecting point.

20. Plaintiff, Boulevard Transit Lines, Inc., a New Jersey Corporation, is a common carrier engaged in a short haul mass transportation operation between Port Richmond, Staten Island and Manhattan, N. Y. via Bayonne and Jersey City, N. J., and is in competition with the defendant herein.

21. The failure of the Commission to include in the certificates of June 11, 1942, or September 24, 1943, the seasonal limitation on the West New York to Keansburg operation was not inadvertent but was a result of a careful, studied, procedure surrounding the issuance of the compliance order of July 20, 1940, which, also, did not contain the seasonal limitation.

22. The failure of the Commission to include a specific designation of city streets, in the certificates of June 11, 1942 or September 24, 1943, issued to Hudson, was not inadvertent.

23. In a petition to the Commission, plaintiff sought to modify or revoke the certificate of September 24, 1943, which was denied in an opinion dated December 10, 1945 by Division 5.

24. Petition for reconsideration before the entire Commission was denied September 13, 1946.

25. A hearing and investigation, to determine if Hudson was operating within the scope of its certificate, was conducted at which time evidence bearing on seasonal operations was excluded, resulting in an opinion of the Commission, sustaining Hudson, dated September 9, 1946.

26. Plaintiff's petition for reconsideration of this opinion, before the entire Commission, was denied April 8, 1947.

27. Plaintiff thereafter filed its compliant and, pursuant to Statute, this Court heard oral argument on December 19, 1947, reserving decision.

## Conclusions of Law

We conclude as matters of law:

1. This Court has jurisdiction of the parties and subject matter of this suit.

2. The Interstate Commerce Commission, by virtue of the power granted to it by Congress, had the authority to issue the certificates of June 11, 1942 and September 24, 1943.

3. It is not mandatory on the Commission to designate specific streets where the streets are not the essence of the operation.

4. The Commission can grant more authority than is sought by applicant in its request for a certificate.

5. Objections to the issuance of the certificates, dated June 11, 1942, and September 24, 1943 were made out of time.

6. The Commission properly excluded evidence bearing on seasonal limitations at the hearing to determine if defendant

was operating within the scope of its certificate.

7. The Commission is without authority to modify or revoke a certificate once it has issued, unless it comes within one of the provisions in Section 212(a) of the Act, 49 U.S.C.A. § 312(a).

8. There is present no condition that would bring the instant case within Section 212(a) of the Act, 49 U.S.C.A. § 312 (a).

9. The order of the Commission, dated April 8, 1947 denying plaintiff's request for reargument and rehearing on a petition to set aside an order of Division 5, was proper and is hereby in all aspects affirmed.