## ROCK ISLAND MOTOR TRANSIT CO. v. UNITED STATES et al.

### Civ. A. No. 49–C–1005.

United States District Court
N. D. Illinois, E. D.
Nov. 29, 1949.

Harry E. Boe and Martin L. Cassell, Jr., Chicago, Ill., for the plaintiff.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., for the defendant.

Henry E. Sasso, Chicago, Ill., Geo. Cosson, Jr., Des Moines, Iowa, for the intervenors State of Iowa and others.

Before DUFFY, Circuit Judge, and IGOE and SHAW, District Judges.

PER CURIAM.

By this complaint plaintiff seeks to set aside, annul and enjoin an order of the Interstate Commerce Commission by which it is proposed to modify certificates of public convenience and necessity issued and to be issued to plaintiff as a motor common carrier of property in interstate commerce. This suit is brought under Sections 1336, 2284, 2322, 2323, and 2325, Title 28 U.S. C.A. The State of Iowa by the Iowa State Commerce Commission, and the Omaha Chamber of Commerce, a non-profit organization composed of shippers, manufacturers and wholesalers located at Omaha, Nebraska, were granted leave to intervene, Section 2323, Title 28, U.S.C.A., and they appear in support of the complaint. The Court has jurisdiction of the parties and subject-matter. It has had the benefit of evidence consisting of transcripts of the record of proceedings before the Commission in the cases, out of which the challenged order comes as well as other pertinent proceedings before that agency.

This complaint presents the question whether the Commission has the power, apart from Section 212 of the Interstate Commerce Act, 49 U.S.C.A. § 312, materially to change or modify—in effect partially to revoke—certificates and operating rights lawfully acquired in appropriate proceedings under Section 213 of the Motor Carrier Act of August 9, 1935, 49 Stat.L. 543, 49 U.S.C.A. § 313, and Section 5(2) (a) (b) of the Interstate Commerce Act, 49 U.S.C.A. § 5(2) (a, b). The Commission makes no claim that it is here acting under Section 212, and the Court so finds. As a common carrier by motor vehicle

plaintiff has been and now is transporting property over the highways in and between the states of Illinois, Iowa, and Nebraska, among other states. This service results from certificates and operating rights purchased in April, 1938, by plaintiff from White Line Motor Freight Company and White Line Trucking Company of Des Moines, Iowa. These companies were motor common carriers possessed of routes between Chicago, Illinois, and Omaha, Nebraska, and many intermediate points, with segments extending to Cedar Rapids and Muscatine, Iowa. In November, 1943, plaintiff also purchased the certificate and operating rights of J. H. and D. H. Frederickson, doing business as J. H. Frederickson and Son, this partnership being a motor common carrier with a route located in western Iowa extending to Omaha, Nebraska. All points located on the White Line and Frederickson routes were stations on the line of railroad of Chicago, Rock Island and Pacific Railroad Company, a common carrier by railroad. At all times here involved plaintiff is and was a subsidiary of that railroad and predecessors in interest. Both plaintiff, as successor in interest to the White Line companies, and Fredericksons on their own account, had "grandfather" rights under a proviso in Section 206(a) of the Motor Carrier Act of August 9, 1935, 49 Stat.L. 551, 49 U.S. C.A. § 306(a). Certificates in accordance therewith were issued in due course to plaintiff, as successor to the White Line companies, and to the Fredericksons.[1]

In October, 1937, plaintiff entered into an agreement to acquire the certificates, operating rights, equipment and terminal facilities, and good will of the White Line companies. As this transaction was subject to the approval of the Interstate Commerce Commission plaintiff filed its application[2] with the Commission. The application was assigned to an Examiner for

1. ICC No. MC-29130 (formerly No. MC-49147), The Rock Island Motor Transit Company, Common Carrier Application. ICC Nos. MC-530 and MC-530, Sub. No. 1,—Application of J. H. and D. H. Frederickson, doing business as J. H. Frederickson and Son.

2. ICC Docket No. MC-F-445, The Rock Island Motor Transit Company-Purchase-White Line Motor Freight Company, Inc., et al.

hearing and on February 12, 1938, the Examiner issued his recommended report and order, recommending approval of the transaction subject to conditions among which was a condition that the plaintiff's motor operation be restricted to the rail rates and bills of lading of plaintiff's railroad affiliate. Plaintiff filed exceptions to this restriction, pointing out that its proposed method of operation included not only service auxiliary to its railroad affiliate, but also a motor common carrier service at motor rates similar to that rendered by its predecessors in interest. In its exceptions plaintiff advised the Commission that it would not go through with the transaction unless this restriction were eliminated. On April 1, 1938, the Commission entered a report and order by which it approved the transaction, making the statutory findings required by Section 213 of the Motor Carrier Act of August 9, 1935, which became Part II of the Interstate Commerce Act, 49 Stat.L. 543. It eliminated the objectionable restriction from its order. With the Commission's authorization therefore the transaction was consummated, and plaintiff commenced operating upon the White Line routes on April 5, 1938, rendering a service at "all-motor" rates as a common carrier by motor vehicle and also a service coordinated with its affiliated railroad. As a condition precedent to consummation, and as required by the Commission's tariff publishing regulations issued under Sections 216 and 217 of Part II of the Interstate Commerce Act, 49 U.S.C.A. §§ 316, 317, plaintiff was obliged to and it did adopt the "all-motor" tariffs and rates of its predecessors in interest. Since April 5, 1938, plaintiff has continuously engaged in such operations. With respect to the Frederickson route plaintiff entered into an agreement to acquire this partnership's certificate of public convenience and necessity and operating rights, and on September 29, 1943,

filed its application [3] with the Commission for approval of the transaction under Section 5(2) (a) (b) of the Interstate Commerce Act, 54 Stat.L. 905. Section 213 of Part II had in the meantime been repealed by the transportation Act of September 1, 1940, 54 Stat.L. 919, and its substance was re-enacted into Section 5(2) (a) (b). As in the White Line case, plaintiff advised the Commission that it proposed to conduct a trucking service on the Frederickson route auxiliary to the affiliated railroad and also a service at all-motor tariffs and rates similar to that conducted by the Fredericksons. On November 28, 1944, the Commission approved the Frederickson transaction without any restrictions. On January 22, 1945, plaintiff consummated the transaction, and since that time plaintiff has operated continuously upon the Frederickson route and unified that route with the White Line route acquired pursuant to the Commission's order of April 1, 1938. As in the White Line proceeding, the Commission's order of November 28, 1944, in the Frederickson proceeding made the statutory findings required by Section 5(2) (a) (b) of the Interstate Commerce Act. It provided further that plaintiff was entitled to the certificate of public convenience and necessity previously granted to the Fredericksons, and that the operating rights evidenced by said certificate could be unified with rights otherwise confirmed in plaintiff. In reliance upon the Commission's orders of April 1, 1938, and November 28, 1944, plaintiff paid the respective purchase prices of $59,400 and $6500 called for by its agreements, and also committed itself to large expenditures in the development of its business.

The order here challenged affirms the Commission's report and order of March 4, 1946,[4] by which the Commission upon

3. ICC Docket No. MC–F–2327, The Rock Island Motor Transit Company-Purchase-J. H. Frederickson and D. H. Frederickson.

4. Commissioners Mahaffie, Miller, and Porter (now deceased) dissented to the report and order of March 4, 1946. Commissioners Mahaffie and Miller again dissented to the action reflected by the report and order of April 11, 1949, and Commissioner Mitchell (who succeeded Commissioner Porter) has also dissented. Commissioner Lee in Kansas City Southern, etc., 28 M.C.C. 5, and Commissioner

its own motion in the acquisition proceedings referred to and on present records proposes materially to modify plaintiff's certificates by means of the imposition of new restrictions, as follows: (1) that henceforth plaintiff is without authority to perform service under "all-motor" local and "all-motor" joint rates with connecting motor carriers, and (2) that plaintiff shall not transport any shipments between any of the following points, or through or to or from more than one of said points: Omaha, Nebraska, Des Moines, Iowa, and collectively Davenport and Bettendorf, Iowa, and Rock Island and Moline, Illinois—this restriction being known as a "key-point" restriction. The first restriction would limit plaintiff's operations to the railroad rates and billing of its railroad affiliate, and the key-point restriction would substantially limit its physical operations and place added burdens on those that remain. The net effect would be materially to impair and destroy the value of the operating rights acquired by plaintiff from the White Line companies and Fredericksons. This action reflects a change of policy as stated or expressed by the Commission in Texas & Pacific M. Transport Co. Com. Car. Application, 41 M. C.C. 721, to which repeated reference has been made in the report on reopening of March 4, 1946, and the one now challenged of April 11, 1949. As regards plaintiff and as applied to it, this change of policy came eight years after it had consummated the White Line transaction, and more than a year after consummation of the Frederickson transaction. The report and order of March 4, 1946, were the first notice that plaintiff had that this new policy would be applied to it in connection with the certificates acquired by plaintiff in the White Line and Frederickson proceedings.

■ The operating rights acquired by plaintiff, and the certificates evidencing such rights, obtained in pursuance of the final orders of the Commission of April 1, 1938, in Docket No. MC-F-445, and November 28, 1944, in Docket No. MC-F-2327, are in the nature of franchise rights and can only be changed or revoked as provided by law. The condition in the White Line order of April 1, 1938, as carried into the certificate of December 3, 1941, issued to plaintiff, that the authority granted shall be subject to such further limitations, restrictions, or modifications as may be found necessary in order to insure that the service shall be auxiliary or supplementary to train service, would not be adequate to change or deprive plaintiff of these vested rights. The fact is that plaintiff's operation is and has been auxiliary or supplementary to train service within the definition expressed by the Commission and as understood by plaintiff in April, 1938, when the rights and operating authorities of its predecessors, White Lines, became vested in plaintiff. So far as the Frederickson rights are concerned, no such condition was contained in the Commission's order of authorization of November, 1944. The only basis for a change or revocation in whole or in part of plaintiff's rights must be found in Section 212(a), Part II of the Interstate Commerce Act, 49 Stat.L. 555, 49 U.S.C.A. § 312(a). U. S. and I. C. C. v. Seatrain Lines, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396; Boulevard Transit Lines v. U. S., D.C., 77 F.Supp. 594; Smith Bros. Revocation of Order, 33 M.C.C. 465. No such basis is here present or shown.

■ Plaintiff is a common carrier by motor vehicle within the definition of Paragraph 14 of Section 203(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 303(a) (14). That paragraph provides: "The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle * * * of * * * or property * * * for compensation."

Rogers in Rock Island Motor, etc., 33 M.C.C. 349, expressed views in agreement with plaintiff's contention that the term, "auxiliary to and supplemental of train service," did not foreclose plaintiff from conducting "all-motor" service, which the order of April 11, 1949, would now prohibit.

The Supreme Court has had occasion to recognize and give full weight to the statutory definition, as for example in U. S. v. Carolina Freight Carriers Corporation, 315 U.S. 475, at page 483, 62 S.Ct. 722, 727, 86 L.Ed. 971, where the Court said: "As we have noted, a 'common carrier by motor vehicle' was defined in § 203(a) (14) as one who 'undertakes' to transport 'passengers or property, or any class or classes of property, for the general public.' "

In the instant case the Commission by its report and order of April 11, 1949, assumes that it is authorized to burden plaintiff's certificate with the restrictions noted. There is nothing in the legislative history [5] of the Motor Carrier Act referred to by defendants to indicate that Congress intended the Commission to deal with plaintiff because of its railroad affiliation in acquisition cases, such as are now before the Court, beyond the findings required by Section 213 of the Motor Carrier Act of 1935 and its re-enacted provisions in Section 5(2) (a) (b) of the Interstate Commerce Act. Those findings were appropriately made in the Commission's orders of April 1, 1938, in MC-F-445, and November 28, 1944, in MC-F-2327, and represented finality of action. Seatrain Lines, Inc. v. United States, D.C., 64 F.Supp. 156; affirmed in 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396. The proposed restrictions would materially change the character of plaintiff's operating authority and impair its ability to fulfill the obligations of a common carrier as defined in Section 203(a) (14). The restrictions are repugnant to the express provisions of the Statute. U. S. v. Carolina Freight Carrier Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971.

As the operating rights acquired by plaintiff in pursuance of the orders of April 1, 1938, and November 28, 1944, were "grandfather" rights authorized by a proviso of Section 206(a) of the Motor Carrier Act, 49 U.S.C.A. § 306(a), the impropriety of attempting to engraft limitations of the sort contemplated by the order of April 11, 1949, is manifest. In U. S. v. Carolina Freight Carrier Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971, the Court had before it, as in these proceedings, the acquisition of "grandfather" rights from a predecessor in interest. Operations were shown to be common carrier in nature but over irregular routes in a designated territory. In granting the certificate the Commission sought to limit carriage of certain commodities to certain specified points. The Court struck down the restriction saying, 315 U.S. at page 486, 62 S.Ct. at page 728, 86 L.Ed. 971: "If the applicant had established that it was a 'common carrier' for a group of commodities or for an entire class or classes of property and was in 'bona fide operation' during the critical periods in a specified territory, restrictions on commodities which could be moved in any one direction or between designated points would not be justified. * * * Presumptively one who had established his status of 'common carrier' would be entitled to carry all of the commodities embraced in his undertaking to all points to which any shipments of any articles were authorized."

315 U.S. at page 488, 62 S.Ct. at page 729, 86 L.Ed. 971: "But where it was actively soliciting whatever it could get at any of the points, it does violence to its common carrier status to make the origin

5. In hearings before the Congressional Committee on the coordinator's Draft of Bill, Frank McManamy, Chairman of the Legislative Committee of the Interstate Commerce Commission, stated that it was the unanimous recommendation of the Commission that railroads, "like anyone else", should be given certificates of convenience and necessity to operate competing bus and truck lines "in order to coordinate the different means of transportation and get the best out of all of them." Hearings on H.R. 6836 before Legislative Committee on Interstate and Foreign Commerce, 73d Congress, 2d Session, pages 16 and 22. Commissioner Eastman explained to the committee that his bill would permit a railroad to own bus and truck lines and to coordinate these different forms of transportation under one management. Hearings on S. 1629, S. 1632, and S. 1635, before the Committee on Interstate Commerce, United States Senate, 74th Congress, 1st Session, Part I, page 85.

or destination of future shipments conform to the precise pattern of the old. Such a pulverization of the prior course of conduct changes its basic characteristics. There is no statutory sanction for such a procedure."

The Supreme Court recognized the gravity of such restrictions on common carrier operations, 315 U.S. at page 488, 62 S.Ct. at page 729, 86 L.Ed. 971: "To appellee such matters involve life or death. Empty or partially loaded trucks on return trips may well drive the enterprise to the wall. (Such) A restriction * * * is a patent denial to appellee of that 'substantial parity between future operations and prior bona fide operations' which the Act contemplates."

The last quoted passage highlights the unlawfulness of the Commission's attempt to impose on plaintiff's certificates covering purchased operating rights conditions which are inconsistent with plaintiff's common carrier status, and which cut down its right to exercise the privileges granted to plaintiff and predecessors in interest.

In Alton R. Co. v. U. S., 315 U.S. 15, 62 S.Ct. 432, 437, 86 L.Ed. 586, the Supreme Court again had occasion to consider the nature of operating rights which must under the statute be conferred by a certificate. The Court spoke of " * * * creating that substantial parity between future operations and prior bona fide operations which the statute contemplates."

In the instant proceeding the Commission by its orders of April 1, 1938, and November 28, 1944, made the statutory findings that plaintiff's acquisition of the certificates and operating rights of White Lines and Fredericksons was consistent with the public interest and would not result in any undue restraint of competition. Plaintiff having acquired the "grandfather" operating rights to which the White Line companies and Fredericksons were initially entitled, the Commission had no lawful power to diminish those rights at some later date since those rights had become vested in plaintiff, as successor in interest, except as such power may be otherwise pro-

vided by statute. That power is delimited with precision in Section 212 of the Act and only in Section 212. Defendants make no claim in the instant case that the Commission's action reflected by its order of April 11, 1949, is premised upon any authority conferred by Section 212.

■ The Commission, being an agency of limited powers and authority, may not exceed its statutory powers. United States v. Pennsylvania R. Co., 242 U.S. 208, 37 S.Ct. 95, 61 L.Ed. 251. Justification for the Commission's exercise of its administrative processes and authority must be found in some express provision of the Interstate Commerce Act, of which the Motor Carrier Act is now a part as Part II. The Commission has recognized this elementary proposition in Smith Bros. Revocation of Certificate, 33 M.C.C. 465, where it thus expressed itself: "The United States Supreme Court has frequently held that the Commission is an agency of limited powers and authority; that, while Congress may delegate to the Commission certain of its own powers and authority, the exercise of such delegation does not extend beyond expressed enactment or its fairly implied inferences; and that important powers should not be read into the act by implication, but should be conferred in clear and unmistakable terms. * * * We have also found that, in the absence of specific language, only the most unmistakable evidence of the intention to confer upon us the power to act under given circumstances would warrant the assumption of such power through our own construction of the Act. Wisconsin R. Comm. v. Chicago & N. W. Ry. Co., 87 I.C.C. 195."

■■ It is apparent that the proceedings covered by the order of April 11, 1949, were reopened to execute a new policy as expressed in the Texas & Pacific case, and that the Commission failed to observe these recognized limitations. Where as here, the action of the Commission in the reopened proceedings results in a material change in plaintiff's certificates and operating rights, and a revocation in whole

522

or in part of such certificates and operating rights, the Commission's power so to act must be clearly evident from the statute. U. S. and I. C. C. v. Seatrain Lines, 329 U.S. 424, 67 S.Ct. 435, 91 L.Ed. 396; United States v. Pennsylvania R. Co., 242 U.S. 208, 37 S.Ct. 95, 61 L.Ed. 251; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U.S. 479, 17 S.Ct. 896, 42 L.Ed. 243. No such power is apparent from this record, and this is not a proceeding under Section 212 of the Interstate Commerce Act.

The purchase price of the White Line rights was $59,400, and the purchase price for the Frederickson rights was $6500. Upon the consummation of the White Line deal on April 5, 1938, plaintiff proceeded to operate and develop the White Line routes. It alleges that if the order of April 11, 1949, should become effective, it stands to lose gross revenue in excess of a million dollars per year. Plaintiff's certificates and operating authorities are rights with very definite value. The Commission's action represented by the order of April 11, 1949, in revoking a substantial portion of plaintiff's certificates and operating authorities will destroy or materially impair their value. Certificates such as here involved and the rights which they confer are property of value. City of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389; Seatrain Lines v. U. S., D.C., 64 F.Supp. 156, 161; Crescent Express Lines v. U. S., D.C., 49 F.Supp. 92; Capitol City W. P. & M. Co., Inc., 12 M.C.C. 79. Such rights are entitled to constitutional protection. Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; United States v. Seatrain Lines, Inc., 329 U.S. 424, 64 S.Ct. 435, 91 L.Ed. 396. The Commission's order violates the Fifth Amendment to the United States Constitution.

The reports and orders of the Interstate Commerce Commission entered respectively on March 4, 1946, and April 11, 1949, are set aside and annulled, and permanently enjoined.